IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CARLA D. MAZZA,
        Plaintiff,

v.                                                    Civil Action No: 1:12 CV 142

QUICKEN LOANS, INC.,
GREEN TREE SERVICING, LLC,
and JOHN DOE HOLDER,
        Defendants.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court as Plaintiff's Motion To Compel Defendant Quicken Loans,

Inc., To Produce Complete Responses To Plaintiff's Combined Discovery Requests [DE 64].  For

the reasons stated herein, the undersigned **GRANTS THE MOTION IN PART AND DENIES**

**THE MOTION IN PART**.

I.
History

Plaintiff brought this predatory lending suit against Defendants claiming Defendant Quicken

Loans, Inc. [Quicken] induced her "to procure an unwise high interest, adjustable rate, second lien

mortgage based on misrepresented terms and a dramatically inflated automated computer valuation

that resulted in a loan that when added to her primary mortgage loan far exceeded the actual fair

market balue of the home.  Then, six months later, Quicken induced Plaintiff to refinance the

previous loan  and procure another unwise high interest loan that was again based on misrepresented

terms and a dramatically inflated automated computer valuation and that contained a baloon payment

of over $56,000 due in fifteen years, which term was never adequately explained or disclosed during

the solicitation process." DE 64.  Plaintiff's claims assert Unconscionable Contract, Illegal Loan and

Fraud against Defendant Quicken Loans, Inc. *Id.*

December 11, 2012 Plaintiff filed her first combined discovery requests on Defendants. DE 36. Defendant Quicken reponded on January 31, 2013 by objecting but producing no documents. Quicken's objections were that the document requests 4, 18, and 19 sought information that was not relevant and unduly burdensome to produce.

Plaintiff initiated discussions concerning the lack of document production on February 14, 2013. The negotiations by mail and electronic mail continued until March 18, 2013 when Quicken advised in writing that it would not produce any information responsive to Interrogatories 4, 18 and 19. During the negotiations the parties came close to reaching agreement on production of documents requested by Interrogatories 4, 18 and 19. Defendant offered to produce documents responsive to Interrogatories 4, 18 and 19 limited in geographic and temporal scope to other West Virginia borrowers whose loans were originated by Quicken Loans in 2006 using the same automated valuation model that was used on Plaintiff's loan provided Plaintiff withdrew her request for responses to Interrogatories 4, 18 and 19. February 22, 2013 Plaintiff counter offered to withdraw the request if Quicken would produce information regarding West Virginia borrowers with Quicken Loans for the years 2005 and 2006 where automated computer valuations as opposed to appraisals were used. Quicken responded on March 1, 2013 saying it would produce for one year [a 12 month period] but not longer as "search and review of records for a two year period would simply be too burdensome for Quicken." Plaintiff counter offered on March 4, 2013 limiting the search to an 18 month period of time between July 1, 2005 and November 30, 2006. March 18, 2013 Quicken withdrew its offers and stated it would not produce any information responsive to Interrogatories 4, 18 and 19.

Notwithstanding its claims of burdensomeness, Quicken was able to identify 76 loans that

were originated by it in West Virginia and in which an automated valuation process was used between July 1, 2005 and Novembe 30, 2006.

Having failed in "good faith negotiations" Plaintiff filed the subject motion to compel. The undersigned finds that Plaintiff complied with L.R.Civ.P. 26.01 (c).

## II.
## Contentions

Plaintiff:

1.  The information sought in Interrogatories 4, 18 and 19 are relevant.

2.  The Plaintiff and Defendant reached agreement on limiting the geographic and subject matter scope of the information sought by Interrogatories 4, 18 and 19 and were close to an agreement on temporal scope [12 months v. 18 months].

3.  Search for the documents and loans responsive to Interrogatories 4, 18 and 19 is not burdensome as Quicken has already located 76 such files fitting the geographic and subject matter scope limitations agreed to during the meet and confer.

Defendant:

1.  The information sought in Interrogatories 4, 18 and 19 are not relevant.

2.  The burden on Quicken to search for the information being sought outweighs the value of the information  given its lack of relevance.

3.  No agreement was reached during the meet and confer.

## III.
## Discussion

The following three interrogatories are at issue[1]:

Interrogatory 4 seeks: "Please list the name, address and telephone number of each West Virginia borrower who applied for a loan from Quicken and for which application a computer valuation of the home was obtained and / or utilized by Quicken."

Interrogatory 18 seeks: "Please list the names, addresses, and phone numbers of the borrowers for each loan originated by Defendant using the appraiser and/or valuation service used for the origination of the subject loan."

Interrogatory 19 seeks: "Please list all West Virginia appraisers and/or valuation services used for the origination of loans by Defendant during the year in which Plaintiff's loan was originated."

Scope

It is indisputable that Interrogatory 4 and Interrogatory 18 are not temporally limited as orginally propounded. It is indisputable that Interrogatory 18 is not geographically limited as originally propounded. It is indisputable that Interrogatory 19 is temporally limited but is not geographically limited as originally propounded. Overall Interrogatories 4, 18 and 19 are not limited in scope to: 1] loans made by Quicken 2] to West Virginia borrowers 3] for a reasonable time period

---

[1] L.R.Civ.P. 37.02 provides: "(a) A motion to compel disclosure or discovery must be accompanied by a statement setting forth: (1) Verbatim each discovery request or disclosure requirement and any response thereto to which an exception is taken. If the discovery request or disclosure requirement is ignored, the movant need only file a motion to compel without setting forth verbatim the discovery request or disclosure requirement." Plaintiff did not provide the language of Interrogatories 4, 18 and 19 verbatim in her motion to compel. Defendant did not ignore the three discovery interrogatories. The reason for the LR is that the Court no longer receives copies of the discovery served in a case. The Court only receives notice that discovery was served. Accordingly, the Court has no way to know what discovery was requested and at issue unless the aggrieved party sets it forth verbatim in the motion to compel. In the instant case, the Court assumes the language of the three interrogatories set forth in Defendant's memorandum in response is a verbatim rendition of the three interrogatories at issue.

prior to the date of Plaintiffs last Quicken Loan 4] and which used an automated computer valuations system as opposed to the full residential real estate appraisal approach to valuation of the property borrowed against.

As written, the Court concludes Plaintiff's disputed three interrogatories are overbroad and were properly objected to by Quicken. Plaintiff is not entitled to unlimited discovery. Tooley v. Napolitano, 556 F.3d 836 (D.C.Cir. 2009).

Relevancy

Plaintiff originated her complaint against Quicken and the other Defendants in the Circuit Court of Harrison County, West Virginia. Quicken removed to this Court. The complaint alleges: 1] Unconscionable Contract; 2] Illegal Loan in violation of W.Va. Code Ch. 31, Art. 17, Sections 8(m)(3) and 8(m)(8) and Ch. 31, Art. 17, Sec. 17; and 3] Fraud against Quicken. Defendant asserts any alleged violation of the West Virginia consumer credit and protection laws was unintentional or the result of a bona fide error of fact in its Seventh Defense.

F.R.Civ.P. 26(b)(1) limits scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense...." The information sought through discovery must be relevant to the issues in the action or useful in uncovering the existence of information relevant to the issues in the case. In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1189 (10th Cir. 2009). The evidence sought need not be admissible at trial. However, "discovery of matter not reasonably calculated to lead to discovery of admissible evidence is not within the scope of Rule 26(b)(1)." Oppenheimer Fund v. Sanders, 437 U.S. 340, 352 (1978).

Unconscionableness

The burden of proof of unconscionableness relative to a contract term is on the party asserting it. Brown ex rel. Brown v. Genesis Healthcare Corp., 228 W.Va. 646, 724 S.E.2d 250, 287

(2011)("Brown I"). "Under West Virginia law, the court will analyze unconscionability of a contract term in terms of two component parts: procedural unconscionability and substantive unconscionability." *Id.* "Substantive unconscionability involves unfairness in the contract itself - 'overall imbalance, one-sidedness, *laesio enormis*, and 'the evils of the resulting contract.'" "We hold that the doctrine of substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns. The sources for these 'public policy concerns' can include 'our federal and state constitutions, our public statutes, our judicial decisions, the applicable principles of the common law, the acknowledged prevailing concepts of the federal and state governments relating to and affecting the safety, health, morals and general welfare of the people for whom government - with us - is factually established.'" *Id.* 288.

"Procedural unconscionability addresses inequities, improprieties, or unfairness in the bargaining process and the formation of the contract. 'Procedural unconscionability has been described as the lack of a meaningful choice, considering all the circumstances surrounding the transaction including 'the [t]he manner in which the contract was entered,' whether each party had 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print[.]' 'Procedural unconscionability involves a 'variety of inadequacies, such as ... literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.' Determining procedural unconscionability also 'requires the court to focus on the 'real and voluntary

meting of the minds' of the parties at the time that the contract was executed and consider factors such as: (1) relative bargaining power; (2) age; (3) education; (4) intelligence; (5) business savvy and experience; (6) the drafter of the contract; and (7) whether the terms were explained to the 'weaker' party." *Id* 285[2].

Common Law Fraud

"The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; (3) that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." Trafalgar Hourse Const., Inc. V. ZMM, Inc., 211 W.Va. 578, 567 S.E.2d 294, 300 (2002).

Illegal Loan

W.Va. Code Chapter 31, Art. 17, Sec. 8 provides: "(m) In making any primary or subordinate mortgage loan, no licensee may, and no primary or subordinate mortgage lending transaction may contain terms which: (3) Make or assist in making any primary or subordinate mortgage loan with the intent that the loan will not be repaid and that the lender will obtain title to the property through foreclosure ...."

W.Va. Code Chapter 31, Art. 17, Sec. 8 provides: "(m) In making any primary or subordinate mortgage loan, no licensee may, and no primary or subordinate mortgage lending transaction may contain terms which: (8) Secure a primary or subordinate mortgage loan in a principal amount that, when added to the aggregate total of the outstanding principal balances of all other primary or subordinate mortgage loans secured by the same property, exceeds the fair market value of the

[2]Brown I was reversed in part. On appeal Brown II [229 W.Va. 382, 729S.E.2d 217 (2012) reaffirmed the above cited holdings from Brown 1. These holding were also cited with approval in Dan Ryan Builders, Inc. V. Nelson, 230 W.Va. 281, 737 S.E.2d 550, 559 (2012).

property on the date that the latest mortgage loan is made.  For purposes of this paragraph, a broker or lender may rely upon a bona fide written appraisal of the property made by an independent third-party appraiser, duly licensed or certified by the West Virginia Real Estate Appraiser Licensing and Certification Board and prepared in compliance with the uniform standards of professional appraisal practice: *Provided,* That commencing January 2, 2012 , and continuing until January 1, 2015, this prohibition does not apply to any mortgage modification or refinancing loan made in participation with and in compliance with the federal Homes Affordable Modification program, or any other mortgage modification or refinancing loan funded through any other federal or state program or litigation settlement; ....”

W.Va. Code Chapter 31, Art. 17, Sec. 8 provides that an aggrieved borrower may bring an action to have a court of competent jurisdiction declare a loan made in willful violation of Article 17 declared void and cancelled and may seek damages, reasonable attorneys fees and costs.

W.Va. Code Chapter 31, Art. 17, Sec. 8.

In the instant case Plaintiff contends that Defendant used a computerized valuation method to appraise her property and in doing so overvalued her property in order to support the loans being made to her. She also contends that  that she will not be able to pay the two loans off and  one of the loans calls for a balloon payment of $56,000.00 which she will not be able to pay.

Insofar, as Plaintiff seeks in Interrogatory 4 “the name, address and telephone number of each West Virginia borrower who applied for a loan from Quicken and for which application a computer valuation of the home was obtained and / or utilized by Quicken”, the information sought is relevant to the liability and damages issues raised by Plaintiff’s claims.  FRCivP 26(b)(1) and (2)(C).  The information requested by the interrogatory will provide the identification information for those who had loans made by Quicken that used the same computerized valuation method to appraise property

as was used to value Plaintiff's property. With the names and contact information, Plaintiff will have information she can use to contact these individuals to request information. It is up to those contacted whether or not to provide information. With the names and contact information, Plaintiff will be able to make a more narrow and focused search of the records located in the County Clerk's offices of the Counties in which those individual's mortgaged property with Quicken to determine the terms of the loans as shown by the deeds of trusts and any other recorded documents. If provided, the information could supply evidence of intent by similar acts against other borrowers by Quicken; evidence of absence of mistake or bona fide error of fact[3]; evidence of knowledge on the part of Quicken that the computer valuation method being used was overvaluing properties or not; evidence of willfulness; evidence of inducement, an element of common law fraud; and evidence supporting all or some of the elements of procedural unconscionability. Moreover, such information may be usable by expert witnesses in the formulation of opinions.

Plaintiff would have no way to obtain such information without first knowing the identity and contact information of those who may be similarly situated.

The only way anyone can obtain this information short of Defendant Quicken providing it from their files is to ferret it from the public records. That would entail a search of the public records located in the County Clerks' offices of each of the West Virginia 55 counties for the relevant time period. Without such information, the Plaintiff would be left to solely what is in Defendant's files with respect to the loans made to Plaintiff.

In oral argument on the motion and in the written response Defendant repeatedly contends

---

[3]Defendant puts this in issue by asserting in its Seventh Defense of its answer to Plaintiff's complaint: "To the extent determined applicable by discovery, any alleged violation of the West Virginia consumer credit and protection laws was unintentional or the result of a bona fide error of fact, notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation or error."

the material sought, even if limited by the court, is not relevant and amounts to nothing more than

a fishing expedition by Plaintiff. The undersigned does not agree. It is true as Defendant contends

that the name, address, and other contact information sought by Plaintiff in Interrogatories 4 and 18,

without more, will not be sufficient "to challenge the reasonableness of Defendant's valuation model

overall" [DE 75, p. 7]. As Defendant suggests, the "more" would be retrospective appraisals for the

other properties taken by Quicken as security for loans during the relevant time period and on which

Quicken used the same computer valuation process used on Plaintiff's property. Defendant's

argument fails because Plaintiff could not do the retrospective appraisals on the other properties

without first knowing what those properties are and as noted herein, the only way for Plaintiff to

know the properties is for Plaintiff to have the requested information from Defendant and then make

the contact and request the information from the individuals identified.

The same type of information is sought by Interrogatory 18 and is according relevant for the

same reasons it is relevant with respect to Interrogatory 4. *Id.*

With respect to Interrogatory 19 which seeks "...all West Virginia appraisers and/or valuation

services used for the origination of loans by Defendant during the year in which Plaintiff's loan was

originated[.]", the undersigned sees no relevance. The information sought is not limited to properties

valued for loan purposes using the computerized valuation method. There is no indication that

Plaintiff's loans were valued by appraisers and/or valuation services other than the computerized

valuation method. As Defendant complains, this appears to be more of a "fishing expedition" than

a search for evidence relevant to the claims being made.

Burdensomeness

FRCivP 26(b)(1) and (2)(C) provides the outline for the burdensomeness analysis. Section

(b)(1) provides the scope: "**Unless otherwise limited by court order**, the scope of discovery is as

follows: Parties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's claim** or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. **All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."** [emphasis added by the Court].

Section (b)(2)(C) provides: "**On motion or on its own** the court must limit the frequency or **extent of discovery** otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, **the amount in controversy, the parties' resources, the importance of the issues at stake in the action,** and the importance of the discovery in resolving the issues." [emphasis added by the Court].

During the telephonic hearing and in the affidavit/declaration of Mike Lyon Quicken acknowledges it closed 877 loans in West Virginia in 2005 and 1013 loans in West Virginia in 2006. Therefore, the total universe of loans that would be subject to a search by Quicken for information responsive to a modified interrogatory 4 and 18 would be 1,890. It would likely be less if the time frame was limited by the undersigned to 18 months or less. While not paperless, Quicken represented in the hearing and in its written response to Plaintiff's motion that Quicken's loan files were maintained electronically [digitally images of the loan documents] for the period of time

surrounding the loans made to Plaintiff. Mr. Lyon estimated a search of the electronic records would take 390 to 445 man hours at $75.00 per hour for Quicken Loans' professional underwriters to complete. [DE 75-3, p.2]. No explanation in the affidavit, response to the motion or motion hearing was proffered by Quicken for using "professional underwriters" to perform this seemingly ministerial search. Quicken's Counsel admitted during the hearing that he did not conduct the search of the records that was done. He explained that he gave guidance to Quicken[4] to conduct an electronic search of its loan records for loans made in West Virginia for an 18 month time period using the computer valuation process. This resulted in 76 loan files being identified. Counsel represented he did not review each of the 76 files but did review some of them. The ones he reviewed he represented did not use the computer valuation method. Someone at Quicken told him the electronic search was unreliable. As a result, counsel for Quicken deemed the electronic search conducted as "unreliable" and thereafter declined to provide any information to plaintiff. None of the 76 files were provided to Plaintiff.

The above process troubles the undersigned with respect to Quicken's claim of burdensomeness. First, there is no explanation provided to the undersigned what the parameters of the word search used with respect to the loan files and whether other word searches may be more successful. Second, the electronic search conducted was characterized by Quicken to be unsuccessful without a thorough review or even hands on oversight by its counsel. Third, counsel for Quicken nor Quicken disclosed whether any of the 76 files produced by the electronic search used the computer valuation method. Fourth, counsel for Quicken did not provide to the undersigned a reasonable explanation why he thought it was reasonable during the meet and confer process to

---

[4]Through questioning by the Court, the parameters [guidance] provided to Quicken for an electronic search it did conduct was for loans made in West Virginia for an 18 month period using the computerized valuation method.

direct that a limited electronic search be conducted  it would be unreasonable for the undersigned

to now direct a search of the Quicken Loan Files limited to: 1) loans made in West Virginia 2) using

the computer valuation method and for 3) an 18 month period of time.  Instead, counsel maintained

his prior arguments of relevance and burdensomeness.

Even if the undersigned accepted at face value   Quicken's cost of conducting a search of its

West Virginia loan files for a limited period of time is $29,000.00, considering that Quicken is a

significant enough company to have "closed and originated hundreds of thousands of loans since its

founding" [DE 75-3, p.2],   the relative cost pales by comparison to the potential damages plaintiff

contends she may recover in this suit as well as the improbability that Plaintiff can obtain the

information sought from any source other than Quicken's files.

When asked if we would again be in Court hearing the same arguments and objections should

the undersigned deny Plaintiff's motion based on interrogatories' 4 and 18 original over breadth and

should Plaintiff in the   discovery time remaining reserve interrogatories seeking the same

information but limited to loans Quicken made in West Virginia for a period of 18 months prior to

the date of the closing of Quicken's last loan made to Plaintiff and which used the computer

valuation method, counsel for Quicken advised "we would."

Accordingly, the undersigned finds that Quicken has not made a sufficient showing that

requiring it to comply with Plaintiff's discovery requests 4 and 18 limited geographically to West

Virginia; limited to loan issued by Quicken using the computer valuation method; and limited to

loans made for the 18 month period of time immediately preceding the date of the closing of the last

loan made by Quicken to Plaintiff would be excessively burdensome thereby outweighing its likely

benefit.  Moreover, Quicken has not shown that the benefits of such a production are so modest when

compared to Quicken's costs that shifting the burden to Plaintiff to pay all or a portion of those costs

is required.  The undersigned finds Quicken's estimated costs to be speculative and not supported.

Discretion

F.R.Civ.P. 26(b)(2) gives the Court wide discretion with respect to discovery.  Such discretion is not without limits.  In exercising its discretion, the Court is required to balance the rights of both plaintiff and defendant.  Surles v. Greyhound Lines, Inc., 474 F.3d 288, 305 (6th Cir. 2007.

Applying the factors listed in F.R.Civ.P. 26(b)(2)(C)(iii), *supra,* the undersigned finds that Plaintiff's Interrogatories 4 and 18 are overly broad and must be modified.  Rather than causing Plaintiff to rewrite and re-submit Interrogatories 4 and 18 in a more limited scope only to have the same objections raised and argued by Defendant Quicken, the undersigned elects instead to direct Defendant Quicken to respond to the same as herein limited.

Fees and Costs

F.R.Civ.P. 37(d)(3)  provides for fee and cost imposition unless the Court finds "failure to act was substantially justified or other circumstances make an award of expenses unjust."  The parties negotiated in good faith and very nearly reached agreement along the same lines as herein imposed thereby avoiding the motion to compel process.  For reasons unknown to the undersigned, those discussions failed.  Plaintiff's interrogatories as originally written were over broad.  Defendant filed a proper objection.  While it appears Defendant walked away from the negotiated settlement of the discovery dispute just at the time of likely success, to penalize it for doing so would undermine the spirit of the process outline in the local rule 26.01(c).  The undersigned finds both Plaintiff and Defendant Quicken were substantially justified in seeking and resisting discovery.

IV.
Decision and Order

For the reasons set forth, Plaintiff's Motion To Compel Defendant Quicken to fully respond to Interrogatories 4 and 18 is **GRANTED IN PART AND DENIED IN PART**.

Within 30 days of the date of this Order, Defendant Quicken shall provide full and complete responses to the following modified and limited interrogatories:

Interrogatory 4:  Please list the name, address and telephone number of each borrower who applied for a loan from Quicken on residential property in West Virginia and for which application a computer valuation of the residential property was obtained and / or utilized by Quicken for the 18 month period of time immediately preceding the closing date of the last loan Quicken made to Plaintiff.

Interrogatory 18 : Please list the names, addresses, and phone numbers of the borrowers for each residential loan or home equity loan originated by Defendant Quicken in the State of West Virginia using the appraiser and/or valuation service used for the origination of the subject loan  with Plaintiff for  the 18 month period of time immediately preceding the closing date of the last loan Quicken made to Plaintiff.

For the reasons stated herein Plaintiff's Motion To Compel Defendant Quicken to fully respond to Interrogatory 19 is **DENIED.**

 For the reasons stated herein, each party shall suffer his or her own costs and fees incurred incident to the subject discovery dispute.

For docketing purposes, the clerk is directed to remove DE 64 from the docket of motions actively pending before the Court.

The clerk is further directed to provide electronic notice of the entry of this order to counsel for the parties.  Service of such notice of electronic filing (NEF) shall constitute service of the order on the parties in accord with F.R.Civ. P. 72

The parties are hereby notified of their respective rights under F.R.Civ.P. 72(a) to "serve and file objections to this order within 14 days" of being served with a copy of the same.

It is so **ORDERED**.

Dated: May 24, 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE